IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-01117-SKC

J.A.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

OPINION & ORDER

---

This action is before the Court under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq., for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff J.A.'s[1] application for disability insurance benefits (DIB). The parties have consented to the Magistrate Judge's jurisdiction. [Dkt 11.][2]

The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary. For the following reasons, the Court AFFIRMS the Commissioner's final decision.

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

[2] The Court uses "[#__]" to refer to specific docket entries in CM/ECF. References to "[AR at __]" are to documents within the administrative record.

1

## BACKGROUND

On December 16, 2013, Plaintiff filed an application for DIB benefits under Title II of the Social Security Act claiming he became disabled on November 1, 2007, due to his post-traumatic stress disorder (PTSD). After his original application processed through to the Appeals Council, the Appeals Council remanded the matter with further direction to the Administrative law Judge.

Plaintiff then appeared and testified at an administrative hearing on May 31, 2018. In September 2019, Administrative Law Judge Kathryn Burgehardt (ALJ), issued a decision in which she found Plaintiff was not disabled. [AR. at 12-24.] Following the ALJ's decision, Plaintiff requested review by the Appeals Council, which denied his request, and in doing so, the decision of the ALJ became the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff timely filed this action on October 9, 2018; the Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## DIB FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-CV-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in steps one through four. The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In her decision, the ALJ followed the five-step process. At step one, she found Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 1, 2007, through his last insured date of December 31, 2011. [*Id.* at 15.] At step two, she found Plaintiff had no medically determinable impairments between the alleged onset date and June 26, 2011; but between June 26, 2011, and December 31, 2011, Plaintiff had the severe impairment of post-traumatic stress disorder (PTSD). [*Id.* at 15-16.] At step three, the ALJ found neither Plaintiff's impairment, nor any combination of impairments, met or medically equaled a listing. [*Id.* at 16-18.] She then found Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: requires work, which was unskilled, with an SVP of one or two, requiring routine tasks and simple decision making. The claimant could not work in close proximity to coworkers or

> supervisors, meaning that the individual could not function as a member of a team, and required minimal to no direct contact with the public. The claimant could sustain superficial contact with the public, coworkers and supervisors.

[*Id.* at 18-19.]

At steps four and five, the ALJ found Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. [*Id.* at 23-24.] Accordingly, the ALJ determined Plaintiff was not under a disability during the relevant period. [*Id.* at 24.]

## STANDARD OF REVIEW

> In reviewing the Commissioner's Final Decision, the Court's
>
> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . .Although the evidence may also have supported contrary findings,

we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff makes two arguments in this appeal: (1) the ALJ did not have valid reasons for assigning little weight to Mr. Sandoval's opinions; and (2) the ALJ did not account for all the relevant mental limitations stated by Dr. Atkin.

### 1. The ALJ's Assignment of Little Weight to Mr. Sandoval's Opinions

Rudy Sandoval is a Licensed Clinical Social Worker who treated Plaintiff from June 27, 2011 through June 11, 2019. Mr. Sandoval rendered various opinions on Plaintiff's limitations, to include a 2015 opinion that Plaintiff's PTSD "render[ed] him permanently unemployable," and a 2016 mental RFC assessment that Plaintiff had marked limitations in various areas of mental functioning. [AR at 975 and 749-51, respectively.]

The ALJ gave little weight to Mr. Sandoval's opinions for the following reasons: (1) he began seeing Plaintiff only a few months before the date he was last insured; (2) he provided identical, or materially identical, letters dated October 2015, and over two years later in November 2017, stating the VA found Plaintiff disabled and unable to maintain substantial gainful employment due to his PTSD; (3) he is not an acceptable source; (4) he "did not support his opinion in March 2016 with any kind of functional analysis;" (5) his October 2015 opinion only gave broad statements of disability and the ultimate issue of disability is reserved to the Commissioner; and (6) he "provided his opinions several years after the claimant's date last insured." [AR at 21.] Plaintiff argues none of these reasons are valid for "essentially rejecting Mr. Sandoval's opinions about plaintiff's mental limitations."

### 1. "Acceptable Medical Sources" and "Other Sources"

The Social Security Administration distinguishes between medical providers who are "acceptable medical sources" and those who are not. SSR 06-03P (S.S.A.), 2006 WL 2329939 (Aug. 9, 2006). The distinction "facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source." *Id.* The reason for the distinction is threefold:

> First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).

*Id.* (emphasis added). Thus, only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are recognized as "acceptable medical sources" under the law. *Id. See* C.F.R. 404.1513(a) (version effective until March 27, 2017) and 416.913(a) (version effective until March 26, 2017).

Licensed clinical social workers are not "acceptable medical sources;" they are deemed "other sources" under the regulations. SSR 06-03P; 20 C.F.R. § 404.1513(d) (version effective until March 27, 2017) and 416.913(d) (version effective until March 26, 2017). Evidence from "other sources" may be used to "show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03P. Information from "other sources" "cannot establish the existence of a medically determinable impairment;" "there must be evidence from an 'acceptable medical source' for this purpose." *Id.* But information from "other sources" "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

Opinions from an "acceptable medical source" may be given greater weight than opinions from "other sources" because "acceptable medical sources" "are the most qualified health care professionals." *Id.* Factors to consider in weighing opinions from medical sources (regardless of the type) include: (1) how long the source has known the individual; (2) how frequently the source has seen the individual; (3) how consistent the opinion is with other evidence; (4) the degree to which the source

presents relevant evidence to support an opinion; (5) how well the source explains the opinion; (6) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (7) any other factors that tend to support or refute the opinion. *Id.* These factors, and the facts of a given case, might warrant giving greater weight to a medical source who is not an "acceptable medical source." SSR 06-03P. Not every factor applies in every case when evaluating an opinion that is not from an "acceptable medical source." SSR 06-03P ("Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.") (emphasis added); 20 C.F.R. § 404.1527(f)(1) ("[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case.") (emphasis added).

The ALJ here appears to have weighed Mr. Sandoval's opinions with each of these factors in mind. [AR at 21.] For example, she accounted for how long Mr. Sandoval has known Plaintiff and how frequently he saw Plaintiff by noting he only treated Plaintiff for a few months prior to the date of last insured. She found certain of his opinions were not supported, others were mere "broad statements that the claimant could not work," and others he gave "several years after" Plaintiff's date of last insured. She further noted Mr. Sandoval is not an acceptable medical source and

9

that she gave "more weight" to Dr. Atkin's testimony because "he is a mental health specialist with PhD qualifications, and was able to review the longitudinal record." [AR at 21.] Thus, the ALJ appropriately weighed Mr. Sandoval's opinions as an "other source", and she provided good reasons beyond simply his lack of status as an acceptable medical source for assigning his opinions little weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions." *See* 20 C.F.R. § 404.1527(d)(2). Nothing more was required in this case."); *Covington v. Colvin*, 678 F. App'x 660, 667 (10th Cir. 2017) ("And although an ALJ must consider the opinions of a non-acceptable source, the ALJ's decision is sufficient if it allows a court to follow the adjudicator's reasoning in doing so.").

The Court finds no error in the little weight given Mr. Sandoval's opinions and concludes the ALJ's findings in this regard are support by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (affirming district court's decision on basis that the order "found that the ALJ articulated adequate reasons for disregarding [treating physician's] opinion").

## 2. Whether the RFC Accounts for Dr. Atkin's Mental Limitations and Limitations the ALJ Found

The ALJ assigned great weight to, and adopted, the opinions of the medical expert, Thomas Atkin, Psy.D. Plaintiff argues the ALJ failed to account for each of Dr. Atkin's mental limitations, as follows: moderate limitations in the ability to understand, remember and apply information; moderate impairment in

10

concentration, persistence, and pace; and the performance of only simple tasks. [Dkt. 12 pp.21-23.] Plaintiff further argues the ALJ failed to account for limitations she found herself, including: moderate limitations in understanding, remembering, concentrating, persisting, maintaining pace, adapting, or managing oneself. [*Id.* at pp.23-24.] Defendant notes the ALJ's RFC limits Plaintiff to unskilled work, and argues that by doing so, the ALJ adequately accounted for Plaintiff's moderate limitations. The Court agrees.

The ALJ found the following RFC:

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: requires work, which was unskilled, with an SVP of one or two, requiring routine tasks and simple decision making. The claimant could not work in close proximity to coworkers or supervisors, meaning that the individual could not function as a member of a team, and required minimal to no direct contact with the public. The claimant could sustain superficial contact with the public, coworkers and supervisors.

[AR at 18.]

An ALJ is not required to repeat moderate limitations in an RFC, but rather, may incorporate those limitations with the restrictions placed on the claimant's work activity. *McGregor v. Saul*, No. CIV-19-496-SM, 2019 WL 7116110, at *3 (W.D. Okla. Dec. 23, 2019). "This approach is acceptable in [this] circuit, for [the Tenth Circuit has] held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [ALJ] accounted for [the claimant's] moderate

11

concentration, persistence, and pace problems in his [RFC] by limiting [the claimant] to unskilled work.").)

For example, in *Lee*, the Tenth Circuit determined an ALJ did not err by failing to include certain moderate limitations assessed by an expert whose opinions the ALJ gave great weight. *Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015). This was because the RFC reflected those moderate limitations and were incorporated therein. *Id*. Similarly, in *Smith*, the Tenth Circuit found the RFC incorporated the claimant's moderate nonexertional impairments as determined by an evaluating physician, even though the RFC did not specifically reference those impairments. *Smith*, 821 F.3d at 1268-69.

The ALJ in the instant case did the same. Her RFC assessment limits Plaintiff to unskilled work "with an SVP of one or two, requiring routine tasks and simple decision making." The limitation to unskilled work with an SVP of one or two properly accounts for Plaintiff's moderate limitations in concentration, persistence, and pace.[3] *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("Thus, the ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work. . . .[W]e conclude that limiting the

---

[3] Plaintiff makes a series of arguments based on the ALJ's use of "or" and Dr. Atkin's use of "and." Plaintiff argues the ALJ's use of "or" somehow indicates she failed to account for each limitation Dr. Atkin found when he listed those same limitations with his use of "and." [Dkt. 12 at ECF pp.21-22.] The semantical arguments are hard to follow, and ultimately, they are not supported by the record evidence. Moreover, the ALJ appears to have used "or" in its inclusive sense.

plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace.").

Additionally, "[u]nskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Id.* (citing SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996).). The ALJ's RFC further limits Plaintiff to work "requiring routine tasks and simple decision making." These additional limitations, along with the limitation to unskilled work, properly account for Plaintiff's moderate limitations in the ability to understand, remember and apply information.[4] *See Harry v. Berryhill*, No. 18-CV-02322-KLM, 2019 WL 4667996, at *10 (D. Colo. Sept. 25, 2019) ("The Tenth Circuit has stated that it is an acceptable approach for an ALJ to account for mental limitations 'by limiting claimant to particular kinds of work activity.'")

For these same reasons, the RFC also accounts for the moderate limitations which Plaintiff claims the ALJ "said she found;" the Court finds no meaningful or

---

[4] In a similar vein, Plaintiff's argument that the ALJ's hypothetical did not include these various limitations is not persuasive. The ALJ's hypothetical specifically included "work which was *unskilled* with an SVP of one or two, requiring routine tasks and simple decision-making . . .." [AR at 10-3 at ECF p.17 (emphasis added).] The *Chapo* case, cited by Plaintiff, is inapposite. *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012). There, the RFC limited plaintiff to "simple, unskilled work at best," but the ALJ "did not even include the restriction to 'simple, unskilled work at best' acknowledged in his own decision." *Id.* at 1293 n3.

13

material difference between what Plaintiff claims the ALJ "said she found," the limitations testified to by Dr. Atkin, and those contained in the RFC.

*   *   *

For the reasons stated herein, The Court is satisfied the ALJ considered all relevant facts, and the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled within the meaning of Title II. The Court finds no error in the weight the ALJ assigned Mr. Sandoval's opinions, and finds Plaintiff's moderate limitations are properly accounted for in the ALJ's RFC assessment.

IT IS ORDERED the Commissioner's Final Decision is AFFIRMED, and this civil action is DISMISSED, each party to pay their own fees and costs.

DATED: March 31, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge